1644

The STATE, Respondent v. Karen JEFFCOAT, Appellant.

(408 S.E. (2d) 247)

Court of Appeals

*Assistant Appellate Defender Tara Dawn Shurling*, of *S.C. Office of Appellate Defense*, Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *Amie L. Clifford*, Columbia, and *Sol. Joseph J. Watson*, Greenville, *for respondent.*

Heard Feb. 19, 1991; Decided April 22, 1991.

On Rehearing Sept. 13, 1991.

GARDNER, Judge:

Karen Jeffcoat (Karen) was convicted of murder and sentenced to life imprisonment. On appeal she asserts the single issue of whether the trial court erred in failing to grant a directed verdict or new trial based on the sufficiency of the evidence. We affirm.

In reviewing a denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State and if there is any direct or substantial circumstantial evidence, reasonably tending to prove the guilt of the accused, we must find that such issues were properly decided by the jury. *State v. Venters*, 300 S.C. 260, 387 S.E. (2d) 270 (1990).

Karen and the victim, Jamie Jeffcoat, were married and had two children. On the morning of the murder, Karen went to work as a school bus driver. When she finished her route at 8:15 a.m., she saw Jamie at the school and asked for a ride home. He refused. Karen then began talking to a co-worker, Gail Ramey, and stated, "That S.O.B. left me . . . when I get home, we're going to have it out." Gail testified that Karen was very angry. Nellie Crain, appellant's supervisor, gave her a ride home, dropping her off about 8:50 a.m.

There is testimony of record that Jamie was supposed to go to his father's house that morning around 10:30. Jamie's father testified he saw Karen slowly drive by his home between 10:35 and 10:40.

Lisa Hostetler, a friend of the Jeffcoats, talked with Karen that morning around 9:30 and Karen said she had heard someone outside. Lisa offered to come over but Karen told her to come over after 10:30. Lisa testified at trial that as she approached Karen's trailer about 10:30, she saw Karen's car about ten feet away from her driveway as if she had just

pulled out. She said that Karen was going in the same direction as Lisa but in front of Lisa. Lisa testified that she thought Karen was only going to the store and therefore pulled into the backyard, planning to wait for her return. There she noticed that the back door was open so she went in with her three year old daughter and discovered Jamie's body on the living room floor. She grabbed her daughter and drove to Karen's father-in-law's house thinking that was where Karen went. When she did not see Karen's car, she drove back to the trailer and about one minute later, Karen arrived.

Lisa testified that Karen acted as if she did not know her husband was dead and went into the house and upon seeing her husband, began screaming. Lisa testified that she told Karen to call an ambulance and that Karen stated, "No, I know he's dead." Finally, they called an ambulance. Lisa did not tell Karen nor the police that she had been the first to discover the body. The statement that she gave on the day of the murder was to the effect that she did not know about the death until she went into the trailer with Karen. There is evidence of record that Karen owned the murder weapon, a .22 caliber pistol.

Although there is evidence of record from which a jury could have found Karen not guilty, we hold there is substantial evidence of Karen's guilt. Accordingly, we affirm.

Affirmed.

BELL, J., and LITTLEJOHN, Acting Judge, concur.